UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **VESNA REYES,** | : | |
| *Plaintiff* | : | |
| v. | : | C.A. No. 20-cv- |
| | : | |
| **SEMPER HOME LOANS, INC., alias,** | : | |
| *Defendant* | : | |

### COMPLAINT

#### I.   Introductory Statement

1. This action is brought by Plaintiff Vesna Reyes ("Plaintiff") against her former employer, Semper Home Loans, Inc., alias, ("Defendant") seeking compensatory, liquidated, and punitive damages, civil penalties, counsel fees, costs and other equitable relief arising out of violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Rhode Island Payment of Wages Act ("RIPWA"), R.I. Gen. Laws § 28-12-1, *et seq.*, and § 28-14-1, *et seq.*, and the Rhode Island Whistleblower Protection Act ("Whistleblower Act"), R.I. Gen. Laws § 28-50-1, *et seq*.

#### II.   Parties

2. Plaintiff Vesna Reyes is a resident of the City of Warwick, County of Kent, and State of Rhode Island.

3. At all times relevant to this action, Plaintiff was an employee within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA and R.I. Gen. Laws § 28-12-2(5) and § 28-14-1(2) of the RIPWA employed by Defendants.

4. Defendant Semper Home Loans, Inc., alias, is a domestic corporation duly registered under the laws of the State of Rhode Island, with a principal place of business located at 225 Dupont Drive, Providence, Rhode Island, 02907.

5. At all relevant times, Defendant was Plaintiff's employer within the meaning of 29 U.S.C. §§ 203(a) and 203(d) of the FLSA and R.I. Gen. Laws § 28-12-2(7) and § 28-14-1(3) of the RIPWA.

### III.    Jurisdiction

6. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367, 2201 and 2202.

### IV.    Venue

7. Venue is proper in this Court insofar as, on information and belief, Defendant resides or may be found in the District of Rhode Island in compliance with the requirements set forth in 28 U.S.C. § 1391.

8. Venue is also proper because all of the acts and/or omissions giving rise to the claims herein occurred in the District of Rhode Island.

### V.    Material Facts

9. On or about May 12, 2020, Ms. Reyes applied for a Loan Processor position with Semper.

10. On May 15, 2020, Ms. Reyes was interviewed by Jenna Morris, Human Resources Director.

11. Given Ms. Reyes's substantial prior mortgage experience, Ms. Morris inquired if Ms. Reyes would be interested in joining Semper as a Post-Closer instead of the Loan Processor role she applied for.

12. Ms. Reyes agreed to join Semper as a Post-Closer.

13. Accordingly, on May 19, 2020, Ms. Reyes attended a second interview with Rylee Crawford, Post-Closing Manager.

14. During both interviews, Ms. Morris and Ms. Crawford expressed excitement at the prospect of Ms. Reyes joining Semper while noting that they were impressed with Ms.

Reyes's qualifications and pleasant disposition.

15. On May 20, 2020, Semper extended Ms. Reyes an initial offer of employment as a Mortgage Loan Post-Closer.

16. Ms. Reyes was able to negotiate a higher compensation package in testament to Semper's belief as to her qualifications and good fit for the position.

17. On May 21, 2020 Ms. Reyes received an email from Ms. Morris containing Semper's finalized job offer for the position of "Mortgage Loan Post-Closer" with a compensation rate of $30.05 per hour (totaling $62,500.00 annually), a $5,000.00 raise after satisfactory completion of ninety (90) days of service, and benefits including medical insurance and a 401k plan.

18. Together with the job offer, Ms. Morris stated, "we [Semper] truly believe you will be a great asset to the department and are excited for you to join the team."

19. Ms. Reyes accepted the May 21, 2020 job offer and, in reliance thereof, left her employment with an established valuation, title, and settlement services company.

20. Ms. Reyes reported to work on June 2, 2020 and started her initial job training.

21. On June 2, 2020, Ms. Reyes worked from 10:00 a.m. to 5:30 p.m. without a lunch break.

22. Except for her first day on June 2, 2020, Ms. Reyes's daily work schedule was from 8:30 a.m. to 5:30 p.m., with a one (1) hour unpaid meal period.

23. Ms. Reyes was paid on an hourly basis.

24. Accordingly, Ms. Reyes subsequently reminded Ms. Morris via emails that she worked through her meal period on June 2, 2020 and referenced necessary adjustments to other time stamps.

25. Ms. Morris's response was that Ms. Reyes would be "paid for the right hours."

26. As her training proceeded, Ms. Reyes received favorable feedback from Ms. Crawford regarding her progress including that her assignments were completed in a "perfect" manner.

27. Indeed, Ms. Reyes did not receive any negative feedback, criticism, or warning at any point during her training period or prior to her termination.

28. Aside from a few technical, computer-related problems outside of Ms. Reyes's control, the training went smoothly with Ms. Reyes having no issues learning the systems in place and performing her job duties.

29. In fact, on June 15, 2020, Ms. Crawford assigned a new account/investor for Ms. Reyes to track conditions effective June 16, 2020.

30. Later that day, Ms. Reyes emailed Ms. Morris to inquire as to the status of her first paycheck and paystub.

31. When she received no response, Ms. Reyes stopped by the Human Resources office where she was informed that her pay was directly deposited and she could access her paystub online.

### *Reports/Complaints of Unpaid Wages*

32. The following morning, on June 16, 2020, Ms. Reyes reviewed her paystub to confirm that adjustments were made for the meal period that she worked through.

33. Ms. Reyes noticed that her paystub reflected payment for a total of forty-seven (47) hours from June 2, 2020 through June 9, 2020, when she had in fact worked forty-seven and a half (47.5) hours during that time period.

34. That was because Ms. Reyes worked through her meal period on June 2, 2020.

35. Accordingly, sometime prior to 12:00 p.m. that day, Ms. Reyes emailed Ms. Morris to inform her that Semper had underpaid her by a half hour.

36. Ms. Reyes worked the remainder of that day without concerns.

### *Retaliation and Wrongful Termination*

37. Towards the end of the day on June 16, 2020, at approximately 5:30 p.m., Ms. Reyes was asked to stop by the Human Resources office prior to leaving for the day.

38. Upon arriving at Ms. Morris's office, Ms. Reyes was met by Ms. Morris and Ms. Crawford who, suddenly and without warning, informed Ms. Reyes that her employment with Semper was being terminated effective immediately.

39. Ms. Reyes inquired about the basis for her termination to which Ms. Morris and Ms. Crawford vaguely responded by repeatedly stating that Ms. Reyes was "not culturally a good fit."

40. Ms. Reyes was, of course, shocked at her abrupt termination especially since she received no prior warning or negative feedback from her manager or coworkers regarding her work performance or her ability to "fit" into the work culture.

41. The following day, June 17, 2020, Ms. Reyes emailed Ms. Morris noting that she "was not aware of personality differences, concerns of work ethic or other perceived problems."

42. Ms. Reyes also requested a letter of termination and inquired about what "cultural" skills she allegedly lacked.

43. In response, Semper, by and through Ms. Morris, changed the purported reason for Ms. Reyes's termination to "not being the right fit for the role during the 90-day probationary period."

44. Semper's purported justification for Ms. Reyes's termination is clearly unworthy of credence where (1) Ms. Reyes was only two (2) weeks on the job and had received only positive feedback prior to her termination; and, (2) Ms. Reyes was terminated by the same two (2) individuals who extensively interviewed her for the position and not only deemed her an

excellent fit for the job, but also noted their belief that she would be a great asset to the team.

45. Additionally, Semper's decision to terminate Plaintiff's employment violated its own Probationary Period policy that requires Semper to review Plaintiff's job performance "at the completion of the [90-day] probationary period" before it makes any determination regarding continued employment, including possible dismissal.

46. Instead, Semper elected to terminate Plaintiff's employment only two (2) weeks into the probationary period and only after Plaintiff reported concerns of unpaid wages.

47. Semper's decision to violate its own probationary period policy supports an inference of retaliatory intent.

*Subsequent Wage and Hour Violations*

48. Not surprisingly, following Ms. Reyes' termination, she has not been compensated for the worked meal period on June 2, 2020 to date.

49. Moreover, Semper once again short-changed Ms. Reyes when issuing her final paycheck dated June 30, 2020.

50. Ms. Reyes worked eight (8) hours each day on June 10-12 and 15-16 for a total of forty (40) hours.

51. Nevertheless, her June 30th paystub reflects payment for only 36.62 hours. As such, Semper failed to pay Ms. Reyes for 3.38 hours worked during the period June 10-16, 2020.

*Minimum Wage and Overtime Pay Violations*

52. At all relevant times, Plaintiff was a non-exempt employee entitled to payment for all hours worked under the FLSA and RIPWA in accordance with her regular compensation rate.

53. As alleged herein, Semper failed and/or refused to pay Ms. Reyes for her worked meal period on June 2, 2020 and for all hours worked from June 10-16, 2020.

54. Employers are liable to employees for unpaid wages relating to all hours

employees are "suffered or permitted to work" regardless of whether the work was requested, authorized, or needed. *See* 29 C.F.R. §785.11 (As long as the employer knows or has reason to believe that its employee is continuing to work, that time is "work time," and the employee is entitled to the payment of wages from the employer for said time.).

55. Here, there can be no dispute that Semper knew or had reason to believe that Ms. Reyes was performing work for which she was not being compensated, namely the half hour worked meal period on June 2, 2020, yet failed and/or refused to properly compensate Ms. Reyes.

56. Moreover, it is also incontrovertible that Ms. Reyes performed forty (40) hours of work from June 10-16, 2020, yet Semper only compensated her for 36.62 hours worked.

57. In light of the same, Semper is liable to Ms. Reyes in the amount of the total unpaid wages, as well as double mandatory liquidated damages, attorneys' fees incurred, and statutory interest. *See* 29 U.S.C. at § 216 (b); R.I. Gen. Laws § 28-14-19.2 and § 28-14-20 (d).

58. Defendants willfully, intentionally, and repeatedly violated the FLSA and RIPWA by failing or refusing to compensate Plaintiff for all hours in an amount equal to the agreed-upon hourly rate prescribed by the FLSA and RIPWA for straight time hours worked from June 2, 2020 to June 16, 2020 as previously alleged herein.

### *Retaliation under the FLSA and RIPWA*

59. The FLSA prohibits employers from discharging or in any other manner discriminating against any employee because the employee "has filed any complaint or instituted or caused to be instituted any proceeding under or related to [FLSA's protections . . .]." 29 U.S.C. § 215(a)(3).

60. The RIPWA likewise prohibits employers from discharging or in any other manner discriminating against any employee because the employee "has made any complaint to his or her employer" related to RIPWA's protections. R.I. Gen. Laws § 28-12-16. [1]

61. Here, Ms. Reyes's termination, shortly after she reported what she reasonably believed to be violations of the FLSA and RIPWA relative to Semper's failure to properly compensate her for all hours worked, gives rises to claims of unlawful retaliation and wrongful termination under the FLSA and the RIPWA.

62. Indeed, the temporal proximity of protected conduct to adverse employment action—in this case almost immediately—raises a compelling inference of retaliatory intent.[2]

63. Additionally, Semper's patently false and fabricated attempt to justify Ms. Reyes's termination is nothing more than pretext, which further supports an inference that Semper was motivated by wrongful or retaliatory intent.

64. Evidence that the employer's stated reasons are pretextual is sufficient for a jury to infer retaliatory animus under applicable law. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 147 (2000) ("[I]t is permissible for the trier of fact to infer the ultimate fact of [retaliation] from the falsity of the employer's explanation.").

65. Indeed, proof that an employer's explanation is "unworthy of credence is ... one form of circumstantial evidence that is probative of intentional discrimination." *Id*.

---

[1] To prove retaliation, a plaintiff need only show that (1) she engaged in protected activity, (2) she was subsequently retaliated against, and (3) that there is a causal connection between the retaliation and the protected activity. *Mesnick v. General Elec. Co.*, 950 F.2d 816, 827 (1st Cir. 1991), *cert. denied*, 504 U.S. 985 (1992).

[2] *See Wyatt v. City of Boston,* 35 F.3d 13, 16 (1st Cir.1994) (*per curiam*) (plaintiff may show causation "by establishing that the employer's knowledge of the protected activity was close in time to the employer's adverse action."); *Russell v. Enterprise Rent-a-Car Co.,* 160 F.Supp.2d 239, 264 (D.R.I.2001) ("where direct evidence of causation is missing, temporal proximity may provide the necessary nexus to meet the third element of the plaintiff's case"); *American Legion Post 12 v. Susa* 2005 WL 3276210, 13 (R.I.Super.) (R.I.Super.,2005) ("[T]he shortness of time between the protected activity and the adverse action was sufficient to establish the required causality.").

66. This is particularly true where, as here, the proffered justification for Ms. Reyes's termination is implausible and inconsistent based on the undisputed facts.[3]

67. Not only is Semper's initial claim—that Ms. Reyes was terminated for not being "culturally a good fit"—admittedly false and pretextual, but also, Semper's own subsequent written contradictions relative to the purported reason for termination gives rise to a compelling inference of retaliatory intent.

68. Moreover, Semper's failure abide by its own probationary period policy by terminating Plaintiff's employment only two (2) weeks into the probationary period and only after Plaintiff reported concerns of unpaid wages further supports an inference of retaliatory intent.

*Whistleblower Act Violation*

69. The Rhode Island Whistleblowers' Protection Act prohibits an employer from taking adverse action, including termination, against an employee "[b]ecause the employee reports verbally or in writing to the employer or to the employee's supervisor a violation, which the employee knows or reasonably believes has occurred or is about to occur, of a law or regulation or rule promulgated under the laws of this state, a political subdivision of this state, or the United States […]." R.I. Gen. Laws § 28-50-3(4).

70. As described above, Plaintiff experienced adverse employment action almost immediately after she expressed complaints to Ms. Morris over Semper's failure to properly compensate her for all hours worked.

---

[3] *Green v New Mexico*, 420 F.3d 1189, 11923-1193 (10th Cir. 2005) ("A plaintiff can show pretext by revealing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence."); *see also Miller v Eby Realty Group, LLC*, 396 F.3d 1105, 1111 (10th Cir. 2005) ("Pretext exists when an employer does not honestly represent its reasons for terminating an employee.").

71. As with Plaintiff's claims under the FLSA and RIPWA, the temporal proximity of protected conduct to adverse employment action, along with Semper's patently false and fabricated attempt to justify Ms. Reyes's termination support an inference that Semper was motivated by wrongful or retaliatory intent.

72. Defendant took adverse employment action against Plaintiff, in whole or in part, in retaliation for exercising her rights pursuant to the Whistleblowers' Act.

73. Defendant's wrongful and/or unlawful acts and/or omissions, including, but not limited to, those described herein, are in violation of the Act and were motivated by malice or ill will toward Plaintiff, and Defendant otherwise acted in bad-faith and/or with reckless indifference to the statutorily protected rights of Plaintiff.

74. As a proximate result of Defendant's wrongful, intentional, unlawful, and/or retaliatory acts and/or omissions, including, but not limited to those described herein, Plaintiff suffered, is now suffering, and will continue to suffer emotional and economic injury including, but not limited to, pecuniary losses, loss of income, loss of front and back pay, loss of employment benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, damage to her professional and personal reputation, and has incurred and will continue to incur expenses for legal services, and other great harm.

## VI.  Claims for Relief

75. Plaintiff incorporates in the counts below the allegations contained in ¶¶1 through 74 above.

### Count One
*Federal Labor Standards Act*
*29 U.S.C. § 201, et seq.*
*Unpaid Wages*

76. Defendant, by its acts and/or omissions, including, but not limited to those described herein, violated the FLSA by failing to pay Plaintiff for all hours worked in accordance

with her regular compensation rate, thereby causing Plaintiff to suffer damages as aforesaid, for which she is entitled to relief pursuant to 29 U.S.C. § 216(b).

### Count Two
*Rhode Island Payment of Wages Act,*
*R.I. Gen. Laws § 28-12-1, et seq., § 28-14-1, et seq.*
*Unpaid Wages*

77. Defendant, by its acts and/or omissions, including, but not limited to those described herein, violated the RIPWA by failing to pay Plaintiff for all hours worked in accordance with her regular compensation rate, thereby causing Plaintiff to suffer damages as aforesaid, for which she is entitled to relief pursuant to R.I. Gen. Laws § 28-14-19.2 and § 28-14-20.

### Count Three
*Rhode Island Payment of Wages Act,*
*R.I. Gen. Laws § 28-12-1, et seq., § 28-14-1, et seq.*
*Retaliation*

78. Defendant, by its acts and/or omissions, including, but not limited to those described herein, engaged in unlawful retaliation against Plaintiff in violation of the RIPWA by unlawfully terminating Plaintiff's employment, thereby causing Plaintiff to suffer damages as aforesaid, for which she is entitled to relief pursuant to R.I. Gen. Laws § 28-14-19.3.

### Count Four
*Federal Labor Standards Act*
*29 U.S.C. § 215, et seq.*
*Retaliation*

79. Defendant, by its acts and/or omissions, including, but not limited to those described herein, engaged in unlawful retaliation against Plaintiff in violation of the FLSA by unlawfully terminating Plaintiff's employment, thereby causing Plaintiff to suffer damages as aforesaid, for which she is entitled to relief pursuant to 29 U.S.C. § 216(b).

**Count Five**
*Rhode Island Whistleblower Protection Act,*
*R.I. Gen. Laws § 28-50-1, et seq.*

80. Defendant, by its individual and/or concerted acts or omissions, including, but not limited to those described herein, engaged in unlawful retaliation against Plaintiff in violation of the Whistleblower Act by unlawfully terminating Plaintiff's employment, thereby causing Plaintiff to suffer damages as aforesaid, for which she is entitled to relief pursuant to R.I. Gen. Laws § 28-50-4 and § 28-50-5.

### VII. Prayers for Relief

**WHEREFORE,** Plaintiff prays that this Court grant the following relief:

1. A declaratory judgment declaring that the acts and/or omissions of Defendant, including, but not limited to those complained of herein, are in violation of the FLSA, the RIPWA, and the Whistleblower Act.

2. An injunction directing Defendants to take such affirmative action as is necessary to refrain from such conduct as is necessary to ensure that the effects of these unlawful employment practices are eliminated and not repeated.

3. An award of all unpaid wages.

4. An award of back pay and front pay.

5. An award of compensatory damages.

6. An award of punitive damages.

7. An award of liquidated damages pursuant to 29 U.S.C. § 216(b).

8. An award of liquidated damages in an amount two times the amount of wages and and/or benefits owed pursuant to R.I. Gen. Laws § 28-14-19.2 and § 28-14-20.

9. An award of reasonable attorney's fees and costs of litigation pursuant to 29 U.S.C. § 216(b).

10. An award of reasonable attorney's fees and costs pursuant to R.I. Gen. Laws § 28-14-19.2.

11. An award of reasonable attorney's fees and costs pursuant to R.I. Gen. Laws § 28-50-5.

12. Imposition of a civil penalty against Defendants pursuant to R.I. Gen. Laws § 28-14-19.1.

13. An award of other appropriate equitable relief pursuant to 29 U.S.C. § 216(b).

14. An award of other appropriate equitable relief or penalties pursuant to R.I. Gen. Laws § 28-14-19.2.

15. An award of other appropriate equitable relief or penalties pursuant to R.I. Gen. Laws § 28-50-4 and § 28-50-5.

16. An award of such other and further relief as this Honorable Court deems just and proper.

### VIII. Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all counts so triable.

### IX. Designation of Trial Counsel

Plaintiff hereby designates Richard A. Sinapi, Esq. and Danilo A. Borgas, Esq. as trial counsel.

Plaintiff,
By her attorneys,
**SINAPI LAW ASSOCIATES, LTD.**

**Date: October 19, 2020**  /s/ **Danilo A. Borgas**
**Danilo A. Borgas, Esq. (#9403)**
**Richard A. Sinapi, Esq. (#2977)**
2374 Post Road, Suite 201
Warwick, RI 02886
Phone: (401) 739-9690
FAX: (401) 739-9040
ras@sinapilaw.com; dab@sinapilaw.com